UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

SUNG-HO HWANG, CONSERVATOR OF
THE ESTATE OF SEUNGICK CHUNG

     Plaintiff,     **MEMORANDUM & ORDER**
                 14-CV-7187 (KAM) (RML)
 -against-

GRACE ROAD CHURCH (IN NEW YORK);
GRACE ROAD CHURCH (IN SOUTH KOREA);
and
OK-JOO SHIN

     Defendants.
-----------------------------------x
**MATSUMOTO, United States District Judge:**

   In this diversity action, plaintiff Seungick Chung seeks
to hold the defendant churches and their pastor liable for injuries
he allegedly suffered due to the church's efforts to cure his
mental illness through religious healing. Defendants have moved to
dismiss the complaint. For the reasons set forth below, that motion
is GRANTED in part and DENIED in part.

**BACKGROUND**

   The following facts are drawn primarily from the second
amended complaint ("complaint") (*see* ECF No. 60, Second Amended
Complaint ("Compl.")) and are taken as true for purposes of this
motion. Plaintiff Seungick Chung ("plaintiff") — who brings this
suit through his appointed legal conservator Sung-Ho Hwang — has
a history of severe mental illness. (Compl. at ¶ 10.) He has been
diagnosed with paranoid schizophrenia and anxiety disorder, and

has been hospitalized occasionally for his mental illness. (*Id.*) Plaintiff also, at times relevant to this suit, was taking various prescription medicines to treat his mental illness. (*Id.*) Plaintiff is a Connecticut resident, and is currently institutionalized at a nursing facility requiring round-the-clock supervision. (*Id.* at ¶¶ 6, 17, 34, 38.)

Grace Road Church (South Korea) (hereinafter "Korean Grace Road Church") is a religious institution based in South Korea founded by Ok-Joo Shin ("Shin"), who also serves as the church's head minister. (*Id.* at ¶¶ 3-4, 11.) In early September 2012, Shin and other church members, including plaintiff's sister Myung Hee Chung ("Ms. Chung"), entered the United States to establish a subsidiary church, Grace Road Church (U.S.) (hereinafter, "U.S. Grace Road Church"). (*Id.* at ¶¶ 12-13.) Plaintiff alleges that Korean Grace Road Church and Shin employ Ms. Chung and other church members. (*Id.* at ¶ 14.) When Shin and other church members arrived in the United States, they rented three successive properties to serve both as places of worship and as residences for Shin and other church members including Ms. Chung. (*Id.* at ¶¶ 15-16.) The church members did not pay to live in the residences. (*Id.* at ¶ 16.) U.S. Grace Road Church was not formally incorporated until May 16, 2013.

Shortly after Ms. Chung arrived in the United States, Shin directed her to "invite[] and convince[]" plaintiff to travel

from Connecticut to New York to live at the church, and "to participate in worship." (*Id.* at ¶ 17.) Shin did so as "part of a plan to treat the Plaintiff's severe psychosis by removing him from prescription medication and attempting religious healing." (*Id.* at ¶ 18.) Shin was either "the origin of said plan, or instrumental to the formulation of said plan." (*Id.*) Plaintiff alleges that Ms. Chung, under the pretense of teaching plaintiff the principles of the church and with knowledge of his severe psychosis, lured him to New York. (*Id.* at ¶ 17-19.) Plaintiff complied, moving to New York to live at the church in September 2012. (*Id.* at ¶ 19.)

While plaintiff lived at the church, Shin and other church members forcibly prevented him from taking his medications, which exacerbated his psychotic symptoms. (*Id.* at ¶¶ 21-23.) Plaintiff experienced hallucinations and suicidal thoughts. (*Id.* at ¶ 23.) He also self-mutilated and deprived himself of food. (*Id.*) During plaintiff's stay at the church, Shin performed "a series of religious services, including sermons," to cure him. (*Id.* at ¶ 24.) On September 25, 2012, plaintiff experienced a psychotic episode during which he left the church and walked "aimlessly" through Queens, New York, until, later that day, Shin located him and returned him to the church in use at that time, sited on Parsons Boulevard in Queens. (*Id.* at ¶¶ 25-26.)

The following day, September 26, 2012, Ms. Chung and other church members forced plaintiff to completely cease using any of his medications, which further aggravated his symptoms. (*Id.* at ¶¶ 27-28.) Approximately two weeks later, on or about October 10, 2012, Shin supervised church members who — in order to restrain plaintiff's outbursts — tied his "wrists, ankles, and knees in a chair or bed with duct tape, and put a sock in his mouth to restrain his screams at night." (*Id.* at ¶ 29.) Plaintiff was restrained "without appreciable interruption" through October 12, 2012. (*Id.*) During this time, he complained about severe pain in his right leg, and church members noticed a "discoloration" on that leg. (*Id.* at ¶ 30.) However, "the church members failed to provide any necessary medical attention, instead electing to perform massages upon the Plaintiff's leg." (*Id.*) The restraint constricted the blood vessels in plaintiff's right leg, which developed into gangrene. (*Id.* at ¶ 31.)

On the morning of October 12, 2012, church members took plaintiff to see a dermatologist, who ordered them to take plaintiff to New York Hospital in Queens. (*Id.* at ¶¶ 32-33.) At the hospital, plaintiff underwent emergency surgery to amputate his right leg above the knee. (*Id.* at ¶ 33.) Several members of the church were later arrested and imprisoned on charges related to these actions. (*Id.* at ¶ 35.) Plaintiff was institutionalized as a result of these events. (*Id.* at ¶ 34.) Plaintiff alleges that,

4

aside from his amputated right leg, he also suffered depressive disorder, trauma, hypertension, sepsis, and injury to his wrists and mouth. (*Id.* at ¶ 36.)

On November 26, 2013, plaintiff commenced this action in the United States District Court for the District of Connecticut against Shin, Korean Grace Road Church, and U.S. Grace Road Church (collectively, "defendants")[1] seeking damages for physical and emotional injuries. (ECF No. 1, Complaint.) Plaintiff amended his complaint in June 2014, and defendants moved to dismiss that complaint. (ECF No. 22, Amended Complaint; ECF No. 23, Motion to Dismiss.) The dismissal motion was denied as moot after the parties consented to a transfer to this court. (ECF Nos. 49-50.)

Plaintiffs thereafter amended their complaint again. That complaint, the operative one in this action, contains twelve causes of action[2] for: (1) false imprisonment; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) *respondeat superior* as to Shin; (5) *respondeat superior* as to U.S. Grace Road Church; (6) *respondeat superior* as to Korean Grace Road Church; (7) assault; (8) battery; (9) negligence; (10) negligent supervision; (11) breach of fiduciary duty; and (12) civil conspiracy.

---

[1] The court notes that all of the defendants are represented by the same attorneys, and presumes that defendants recognize the potential for conflicting interests to arise in this litigation.

[2] The complaint actually alleges thirteen causes of action, but omits a seventh claim.

Defendants again moved to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6), with a supporting memorandum of law. (ECF Nos. 65, 66, Memorandum in Support of Motion to Dismiss ("Def. Mem.")), which plaintiff opposed. (See ECF Nos. 67, Memorandum in Opposition to Motion to Dismiss ("Pl. Opp'n").) Defendants have not submitted a reply.

## LEGAL STANDARD

On a motion to dismiss, the court must accept as true the factual allegations in the operative complaint and draw all reasonable inferences in the plaintiff's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In certain circumstances, the court is permitted to consider documents beyond the complaint in deciding a motion under Fed. R. Civ. P. 12(b)(6). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The court may also consider "matters of

which judicial notice may be taken."[3] *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (citation omitted). For purposes of deciding the component of the motion to dismiss aimed a plaintiff's failure to state a claim, "it is improper for a court to consider declarations and affidavits." *Novie v. Vill. of Montebello*, No. 10-CV-9436, 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012) (collecting cases).

In deciding the defendants' motion to dismiss based on plaintiff's failure to establish personal jurisdiction over one of the defendants (*see* Def. Mem. at 2-3), the court may rely on materials outside the pleadings, "including any affidavits submitted by the parties." *LaRoss Partners, LLC v. Contact*, 911 Inc., 874 F. Supp. 2d 147, 152 (E.D.N.Y. 2012). Where a court "relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, [a plaintiff] need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008) (internal quotation marks and citation omitted). The court must

---

[3] For purposes of this decision, the court takes judicial notice of the certificate of incorporation for U.S. Grace Road Church. (*See* Def. Mem., Ex. A.) *See Staehr v. Mack*, No. 07-CV-10368, 2011 WL 1330856, at *6 n.5 (S.D.N.Y. Mar. 31, 2011) ("Courts may take judicial notice of a certificate of incorporation on a motion to dismiss." (citation omitted)); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 460 n.13 (S.D.N.Y. 2013) (taking "judicial notice of the provisions of [entity's] certificate of incorporation" on a motion to dismiss); *cf. Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with SEC). The authenticity of the certificate is not in dispute.

construe the pleadings and affidavits in the light most favorable to plaintiff, and all doubts must be resolved in his favor. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed.) (recognizing that federal courts "take as true the allegations of the nonmoving party with regard to the jurisdictional issues and resolve all factual disputes in his or her favor").

## DISCUSSION

Defendants raise a variety of arguments in their motion to dismiss. First, they argue that the court lacks personal jurisdiction over Korean Grace Road Church. Second, they argue that seven of the claims must be dismissed because they were brought after the expiration of the statute of limitations. Third, they contend that U.S. Grace Road Church must be dismissed because it was not incorporated at the time of the events in question. Finally, they argue that seven of the causes of action — including some that are alleged to be beyond the statute of limitations — must be dismissed more generally for failure to state a claim.[4]

---

[4] Although the parties previously disputed whether the substantive law of New York or Connecticut governs this case (*compare, e.g.*, ECF No. 32, Plaintiff's Objection to Defendants' First Motion to Dismiss at 8-12, *with* ECF No. 36, Defendants' Reply to Plaintiff's Objection at 3-6), in this round of briefing they now agree that New York law applies. (*See* Def. Mem. at 1; Pl. Opp'n at 12.) The court accepts that agreement. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 n.4 (2d Cir. 1999) ("The parties agree that New York law governs this action, and we therefore apply it.").

## I.  **Personal Jurisdiction**

Defendants first argue that the court lacks personal jurisdiction over Korean Grace Road Church. (Def. Mem. at 2.) "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

The determination of personal jurisdiction in a diversity case requires a two-step process. First, the district court applies the law of the forum state — here, New York — to determine whether the exercise of jurisdiction is appropriate. *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). If so, the district court next looks to "whether such exercise comports with the requisites of due process." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). Because defendants do not argue that the assertion of personal jurisdiction offends due process here, the court focuses its inquiry on New York's long-arm statute.

In New York, long-arm personal jurisdiction over a non-domiciliary defendant, like Korean Grace Road Church, is governed by N.Y. C.P.L.R. § 302 ("§ 302").[5] *See Penguin Grp. (USA) Inc. v.*

---

[5] There is no argument here that general, as opposed to specific, jurisdiction exists over Korean Grace Road Church. The Supreme Court's recent opinion in *Daimler AG v. Bauman* would, in any case, foreclose such an argument. *See* 134 S. Ct. 746, 763 (2014) (holding that, for general jurisdiction to be appropriate, a corporation's contacts with a

*Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). The long-arm statute provides, in relevant part, that — as to a cause of action "arising from any of the acts enumerated in this section" — a court may "exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent":

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or . . .
>
> 4. owns, uses or possesses any real property situated within the state.

§ 302(a). Plaintiff appears to argue that the court may exercise personal jurisdiction over Korean Grace Road Church under any of these three provisions. (Pl. Opp'n at 20-22.) However, because the court concludes that § 302(a)(2) supplies personal jurisdiction over the Korean branch of the church, a searching analysis under § 302(a)(1) and § 302(a)(4) is unnecessary.[6]

---

forum must be so "continuous and systematic as to render [it] essentially at home in the forum State" (internal quotation marks and citation omitted)). Even assuming, as plaintiff alleges, that Korean Grace Church "derive[s] substantial revenue from interstate or international commerce" in New York (Compl. at ¶ 9; *see also* Pl. Opp'n at 22) and accepting as true all of plaintiff's allegations about the Korean Grace Road Church's targeting of New York for the establishment of a subsidiary, plaintiff still cannot make a prime facie showing that Korean Grace Road Church is "at home" in New York.

[6] Section 302(a)(1) is "typically invoked for a cause of action against a defendant who breaches a contract with plaintiff or commits a *commercial* tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) (emphasis added) (internal quotation marks and citation omitted). The lack of a breach of contract or commercial tort makes § 302(a)(1) a weak

A.  N.Y. C.P.L.R. § 302(a)(2)

Plaintiff's central allegations in the complaint relate to tortious behavior, and so the natural jurisdictional fit for their complaint is § 302(a)(2). That section supplies personal jurisdiction where a cause of action arises out of a foreign entity's commission — "in person or through an agent" — of a "tortious act within the state." § 302(a)(2). "[P]ersonal jurisdiction arises under this section only pursuant to actions

---

jurisdictional fit for this case. As to § 302(a)(4), "it is not enough for the property to be related in some way to the parties' dispute; the plaintiff's 'cause of action [must] arise[] out of the fact of ownership, use or possession of New York realty.'" *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (quoting *Tebedo v. Nye*, 256 N.Y.S.2d 235, 236 (N.Y. Sup. Ct. 1965)). For example, personal jurisdiction might be appropriate under this section in a case where a plaintiff seeks to compel a defendant to convey realty to him or, alternatively, to pay damages. *See, e.g.*, David D. Siegel, *New York Practice* § 89 (5th ed. 2014) (discussing *Tebedo*, 256 N.Y.S.2d at 236). Although there are very few cases involving § 302(a)(4), the prototypical case involves real property at the very center of the dispute, as in *Tebedo*. *See* 256 N.Y.S.2d at 236; *see also Salamon v. Friedman*, 783 N.Y.S.2d 651 (N.Y. App. Div. 2004) (asserting jurisdiction under § 302(a)(4) over a defendant in an action to confirm an arbitration award through the defendant's ownership of real property in the state, where that property was the subject of the petition to confirm the arbitration award); *cf. Karrat v. Merhib*, 307 N.Y.S.2d 915 (N.Y. Sup. Ct. 1970) (exercising § 302(a)(4) jurisdiction in an action to recover a broker's commissions for the sale of New York realty owned by the nonresident defendant); *cf. Cerberus Capital Mgmt., L.P. v. Snelling & Snelling, Inc.*, 12 Misc. 3d 1187(A), 2005 WL 4441899, at *12 (N.Y. Sup. Ct. 2005) ("Unless the parties have actually entered into a transaction that involves New York real property, that a defendant merely owns real property in New York is not sufficient to support the court's exercise of jurisdiction under CPLR 302(a)(4)."). None of plaintiff's claims arise out of the "fact of ownership, use or possession of New York realty." *Grossman*, 77 F. Supp. 3d at 346 (internal quotation marks and citation omitted). Instead, each of the claims appear to derive from defendants' alleged mistreatment of plaintiff. The causes of action could be maintained irrespective of the Korean church's use of the land. Consequently, § 302(a)(4) likely cannot confer personal jurisdiction over Korean Grace Road Church.

taken while physically within New York State." *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 430 (E.D.N.Y. 2012) (citation omitted). New York federal and state courts adhere firmly to this strict, bright-line physical presence requirement. *See King*, 126 F.3d at 28 ("[I]f a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, [New York law] would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff." (internal quotation marks and citation omitted)); *Carlson v. Cuevas*, 932 F. Supp. 76, 80 (S.D.N.Y. 1996) ("To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State.").

Plaintiff does not allege that Korean Grace Road Church directly committed any tortious actions while physically present in New York. However, personal jurisdiction under § 302(a)(2) "may also be predicated on acts taken by an agent." *Schaffer*, 895 F. Supp. 2d at 430. "In determining whether an agency exists under § 302, courts have focused on the realities of the relationship in question rather than the formalities of agency law." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986) (citations omitted); *see also Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988) (noting that whether a defendant's representative is an "agent" for purposes of § 302(a) turns on whether the

representative acted "for the benefit of and with the knowledge and consent of [the] defendant and [the defendant] exercised some control over [the agent] in the matter").

Here, plaintiff alleges that the church members including Ms. Chung were "employees of the Korean Grace Road Church and the Defendant, Shin." (Compl. at ¶ 14; *see also id.* at ¶ 5 (alleging that the defendants "are and were the instrumentality and alter-ego of each other" and that they at all relevant times shared a "unity of interest").) Plaintiff further alleges that church members, including Ms. Chung, lured plaintiff to their New York church to attempt a religious healing of his mental illness, and subsequently tightly tied him to a chair or bed with duct tape. (Compl. at ¶¶ 17-18, 29-31.) This resulted in the amputation of part of plaintiff's right leg and further injuries both physical and emotional. (Compl. at ¶¶ 33-40.)

Taking plaintiff's allegations as true, they are sufficient — on a motion to dismiss — to make a "prima facie showing of personal jurisdiction over the defendant." *Porina*, 521 F.3d at 126. Focusing on the "realities of the relationship" rather than the "formalities of agency law," *Naughton*, 806 F.2d at 366, the common-sense read of plaintiff's complaint is that the church members adhered to religious healing beliefs and instructions emanating from the Korean Grace Road Church — and acted as the church's agent-employees (Compl. at ¶ 14) — in subjecting plaintiff

to the alleged tortious acts.[7] By the same logic, Shin's alleged tortious activities in New York — as the Korean church's head minister and founder (*id.* at ¶¶ 3-4) — can be imputed to the Korean branch of the church. *Cf. Bialek v. Racal-Milgo, Inc.*, 545 F. Supp. 25, 36 (S.D.N.Y. 1982) (holding that corporation sued for fraudulent inducement of contractual relations "'committed a tortious act' in New York within the meaning of Section 302(a)(2) when its officers came to New York to interview plaintiff and others" for a position).

Accordingly, the court concludes that plaintiff has at least made a prima facie showing that this court has personal jurisdiction over Korean Grace Road Church.

## II. <u>Statute of Limitations</u>

Defendants next move to dismiss a series of claims because they were brought after the expiration of the statute of limitations. (Def. Mem. at 3-4.) Plaintiff claims, however, that

---

[7] The affidavit of Ms. Chung, which conclusively states that she "never acted as an agent of . . . Grace Road Church South Korea" or Shin (Def. Mem., Ex. B), does not alter the court's conclusion, particularly in light of the considerable contrary — and occasionally combative — testimony from Ms. Chung presented by plaintiff. (*See* Pl. Opp'n, Ex. 1, at 83 ("Q: [Y]ou only went because Pastor Shin was coming to New York, correct? A: Not only for that, but that could be one of the reasons."); *id.*, Ex. 3.) The court must resolve all factual inconsistencies in plaintiff's favor. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (3d ed.) (recognizing that federal courts "take as true the allegations of the nonmoving party with regard to the jurisdictional issues and resolve all factual disputes in his or her favor"); *see also Petra Bank*, 989 F.2d at 79–80.

these claims were tolled due to his insanity. (Pl. Opp'n. at 23-24.)

The claims at issue are for false imprisonment, intentional infliction of emotional distress, assault, and battery, each of which has a one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3) (providing explicit one-year statute of limitations for false imprisonment, assault, and battery); *Kourkoumelis v. Arnel*, 655 N.Y.S.2d 653 (N.Y. App. Div. 1997) (applying N.Y. C.P.L.R. § 215's one-year limitation period to intentional infliction of emotional distress claim); *see also Kwarren v. Am. Airlines*, 757 N.Y.S.2d 105, 106 (N.Y. App. Div. 2003) (same).

New York law provides for statutory tolling of certain actions, however, as a result of a plaintiff's insanity. The relevant statute provides:

> If a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, . . . if the time otherwise limited is less than three years, the time shall be extended by the period of disability.

N.Y. C.P.L.R. § 208. The insanity toll applies to "'individuals who are unable to protect their legal rights because of an over-all inability to function in society.'" *Carmichael v. Hobbs*, 371 F. App'x 155, 157 (2d Cir. 2010) (quoting *McCarthy v. Volkswagen of Am., Inc.*, 435 N.E.2d 1072, 1073 (N.Y. 1982)). If a defendant can demonstrate that a claim "facially falls outside the

limitations period," the burden shifts to the plaintiff to "show that § 208 is applicable and tolling is appropriate." *Bejaoui v. City of New York*, No. 13-CV-5667, 2015 WL 1529633, at *8 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks and citation omitted).

Although mental illness alone does not compel statutory tolling for insanity and New York courts have suggested that the insanity tolling provision should be interpreted narrowly, *see McCarthy*, 435 N.E.2d at 1074, allegations of paranoid schizophrenia, suicidal behavior, and hospitalizations can justify tolling. *See Cairl v. Cnty. of Westchester*, 542 N.Y.S.2d 199 (N.Y. App. Div. 1989) (upholding decision that a plaintiff was "insane" under § 208 where she suffered from "paranoid schizophrenia and borderline personality disorder with symptoms of hallucinations and impulsive suicidal behavior necessitating frequent and multiple hospitalizations, constant medication and psychotherapy"); *Grasso v. Matarazzo*, 733 N.Y.S.2d 100, 101 (N.Y. App. Div. 2001) (finding tolling permissible because plaintiff could not "function in society" and "uncontradicted medical testimony established that the plaintiff suffers from chronic paranoid schizophrenia").

Plaintiff's allegations indicate that he sustained his injuries, at the latest, on October 12, 2012, when his right leg was amputated above the knee. (Compl. at ¶ 33.) The statute of limitations ran for the relevant claims on October 12, 2013, one

16

year later. This suit was not filed until November 26, 2013, (ECF No. 1, Complaint), 45 days after the limitations period had expired. Defendants have therefore met their burden of showing that the claims facially fall outside the statute of limitations. Plaintiff does not dispute that fact.

Plaintiff has, however, alleged a history of severe mental illness, including diagnoses of paranoid schizophrenia, anxiety disorder, and a history of seizure disorder. (Compl. at ¶ 10.) He took prescription medication to treat these illnesses and "required periods of hospitalization." (*Id.*) The complaint characterizes plaintiff as unable "to make informed decisions" or to "fully appreciate the nature" of defendants' request for him to move to New York. (*Id.* at ¶ 17.) Plaintiff alleges that these mental health problems, including psychotic symptoms, were exacerbated by the events giving rise to this action. (*Id.* at ¶¶ 34-40.) He was institutionalized after the loss of his leg, and "placed in a nursing facility requiring 24/7 supervision." (*Id.* at ¶¶ 34, 38.) A conservator has been appointed to represent his interests. (*Id.* at ¶ 1.)

Plaintiff has met his burden to show that he was suffering from "insanity at the time the cause of action accrue[d]." N.Y. C.P.L.R. § 208. In particular, his diagnosed paranoid schizophrenia, exacerbated psychotic symptoms, hospitalizations, and prescribed medication — as well as his

inability to comprehend the true nature of defendants' request that he move to New York — reflect an "over-all inability to function in society." *Carmichael*, 371 F. App'x at 157 (internal quotation marks and citation omitted); *see also Cairl*, 542 N.Y.S.2d at 199 (upholding decision that plaintiff was "insane" under § 208 where she suffered from "paranoid schizophrenia and borderline personality disorder with symptoms of hallucinations and impulsive suicidal behavior necessitating frequent and multiple hospitalizations, constant medication and psychotherapy"); *Grasso*, 733 N.Y.S.2d at 101 (finding tolling permissible where "uncontradicted medical testimony established that the plaintiff suffers from chronic paranoid schizophrenia"). Plaintiff alleges that after defendants discontinued his medication, he suffered outbursts and exacerbation of his psychotic symptoms including auditory and visual hallucinations, suicidal thoughts, and self-mutilation. He also alleges that he "wandered aimlessly" on the streets of Queens until defendants picked him up and returned him to the church. The foregoing facts belie any suggestion that plaintiff had the ability to function in society. (*Id.* at ¶¶ 25-26.)

This conclusion is further reinforced by the scheme alleged in the complaint. Plaintiff alleges his mental illness was so severe that defendants sought a religious cure. (Compl. at ¶¶ 17-18.) Shin allegedly directed that plaintiff be brought to

New York and deprived of his medication, and provided "religious services, including sermons," to cure his psychosis. (*Id.* at ¶ 24.) The lengths to which defendants went to heal plaintiff's illness suggest that they believed his mental illness was severe, permanent, and disabling, not merely temporary or insignificant. Accordingly, the court concludes that statutory tolling due to plaintiff's insanity is appropriate in these circumstances.

**III. Corporate Liability**

Defendants next argue that U.S. Grace Road Church cannot be held liable here because the organization was unincorporated at the time of the events giving rise to this litigation. (*See* Pl. Mem. at 1 ("Plaintiff cannot sue an entity for alleged acts that took place prior to the entity's existence.").) Plaintiff proposes three alternative theories by which the later-formed, U.S.-based religious corporation can assume tort liability for actions taken by the defendants and church members before the church's legal incorporation. (Pl. Opp'n at 12-20.) First, they argue that U.S. Grace Road Church was a *de facto* corporation at the time of the tortious conduct. Second, they propose that U.S. Grace Road Church can be held liable under the doctrine of promoter liability. Finally, they contend that New York religious corporation law and not-for-profit law together provide that U.S. Grace Road Church assumed liability for the tortious conduct alleged here. The court concludes that none of these proposed bases of liability are

applicable in this case. Accordingly, U.S. Grace Road Church must be dismissed.

A.  *De Facto* Corporation

Plaintiff first argues that U.S. Grace Road Church was a *de facto* corporation at the time of the events underlying this suit. "Under very limited circumstances, courts may invoke the de facto corporation doctrine where there exists (1) a law under which the corporation might be organized, (2) an attempt to organize the corporation and (3) an exercise of corporate powers thereafter." *In re Hausman*, 921 N.E.2d 191, 193 (N.Y. 2009); *see also Lehlev Betar, LLC v. Soto Dev. Grp., Inc.*, 15 N.Y.S.3d 168, 169 (N.Y. App. Div. 2015) (listing requirements).

New York courts have interpreted the "attempt to organize the corporation" requirement narrowly. There must be a "colorable attempt to comply with the statutes governing incorporation" prior to the exercise of corporate powers. *Kiamesha Dev. Corp. v. Guild Props., Inc.*, 151 N.E.2d 214, 219 (N.Y. 1958). The "mere execution of a paper which is not filed and does not become a public record is insufficient." *Stevens v. Episcopal Church History Co.*, 125 N.Y.S. 573, 580 (N.Y. App. Div. 1910). That principle was applied recently by the New York Court of Appeals in *Hausman*. The issue there was whether a decedent's

children formed a *de facto* limited liability company[8] "capable of receiving title to real property that was the subject of a deed executed by decedent shortly before her death." 921 N.E.2d at 192. The decedent's children drafted an operating agreement for the LLC and executed articles of organization, but did not immediately file the articles of organization with the Department of State. *Id.* Approximately one month later, the decedent executed a deed transferring ownership of the property to the LLC. *Id.* at 192. Two weeks after that conveyance, the articles of organization were filed with the Department of State. *Id.* The court voided the transfer, and held that "merely executing articles of organization along with an operating agreement and nothing more" did not qualify as a "good faith effort to comply with mandatory state filing requirements." *Id.* at 193-94.

*Hausman* singlehandedly forecloses the applicability of the *de facto* corporation doctrine in this case. The latest event in this case giving rise to liability was October 12, 2012. (Compl. at ¶¶ 29-36.) The articles of incorporation for U.S. Grace Road Church were not filed until May 16, 2013. (Def. Mem., Ex. A.) There are no allegations in the complaint or in the briefing that there

_____

[8] The *Hausman* court explicitly determined that the *de facto* corporation doctrine applies in the same manner to both corporations and limited liability companies. *See* 921 N.E.2d at 193 ("The statutory schemes of the Business Corporation Law and the Limited Liability Company Law are very similar, and we see no principled reason why the de facto corporation doctrine should not apply to both corporations and limited liability companies.").

was ever any good faith attempt to comply with the filing requirements. Plaintiff argues that "Defendant Shin and various members came to the United States to form a subsidiary church. Defendants moved through three residences in New York before finding a more permanent location, which evinces a design to establish and incorporate a church." (Pl. Opp'n at 19.) These efforts to incorporate fall short of the far more substantial, formal, and unequivocal efforts held insufficient in *Hausman*, where the decedent's children executed articles of organization and drafted an operating agreement for the LLC. *See* 921 N.E.2d at 192-94.

Accordingly, U.S. Grace Road Church was not a *de facto* corporation at the time of the events giving rise to this litigation and cannot be held liable under that theory.

B. <u>Promoter Liability</u>

Plaintiffs next seek to hold U.S. Grace Road Church liable through the doctrine of promoter liability. A promoter is a "founder or organizer of a corporation or business venture," Black's Law Dictionary (10th ed. 2014), and commonly signifies one "who assumes to act on behalf of a proposed corporation that is not yet incorporated." *Menard, Inc. v. Dial-Columbus, LLC*, 781 F.3d 993, 998 (8th Cir. 2015) (internal quotation marks omitted) (citing William Meade Fletcher, 1A *Fletcher Cyclopedia of the Law of Corporations* § 189 (2015) [hereinafter *Fletcher*]). "A

promoter's acts do not automatically give rise to corporate liability." *Gianino v. Panacya, Inc.*, No. 00-CV-1584, 2000 WL 1224810, at *7 (S.D.N.Y. Aug. 29, 2000) (citations omitted) (recognizing that a corporation is generally "not liable for the torts of its promoters, or generally liable for contracts between third parties and its promoters absent corporate adoption of the contract").

Although a "corporation is not liable for torts that its promoters committed [or contracts the promoters entered into] before it came into existence," 1A *Fletcher* § 218, an exception exists where a corporation knowingly accepts benefits of (or otherwise ratifies) a promoter's contractual agreement or tortious conduct. *See Universal Indus. Corp. v. Lindstrom*, 459 N.Y.S.2d 492 (N.Y. App. Div. 1983); 1A *Fletcher* § 218 ("A corporation may become liable for torts of its promoters prior to its creation, however, if it has rendered itself liable by its own act after acquiring corporate existence."). For example, in *Lindstrom*, a buyer-promoter obtained certain goods from a seller before the buyer's incorporation of two corporate entities. *See id.* at 493. A dispute later arose, apparently over payment. *See id.* When the seller sued the promoter and the corporations, the court determined that the later-formed corporations could potentially be held liable because they had accepted delivery of the goods. *See id.* at 494 ("Here, plaintiff's allegation in its complaint that the corporate-

defendants accepted delivery of the shipments in question was not challenged by the corporate-defendants in their cross motion. Even if plaintiff dealt with [the promoter] personally, this would not necessarily relieve the corporate-defendants of their alleged contractual liability.").

Plaintiff spends most of his briefing on this issue attempting to show that Shin, the church members, and Ms. Chung were promoters for the U.S. Grace Road Church. (Pl. Opp'n at 17-18.) Even granting plaintiff the truth of the assertion that these individuals were in fact promoters, there is no indication in the complaint or the briefing that U.S. Grace Road Church ever rendered itself liable for their actions. Unlike the corporate-buyers in *Lindstrom* who obtained a benefit from the promoter's transaction, U.S. Grace Road Church never profited in any way — economically or otherwise — from the pre-incorporation actions of Shin, the church members, or Ms. Chung. *Cf.* 1A *Fletcher* § 218 ("A corporation may become liable for its promotor's wrongful acts if it accepts or retains the benefits of those acts."). Liability for the U.S.-based church premised on the actions of the alleged promoters here is therefore inappropriate.

C.   New York Religious Corporation and Nonprofit Law

Plaintiffs seek to sidestep the foregoing precepts of New York corporate law with an intricate and novel argument about the intersection of New York religious corporation law and New

24

York nonprofit law. (Pl. Opp'n at 13-16.) Plaintiffs point to N.Y.

Relig. Corp. Law § 4, which provides, in relevant part, that

> the temporalities[9] and property of an unincorporated
> church, or of any unincorporated religious society,
> body, association or congregation, shall, on the
> incorporation thereof, become the temporalities and
> property of such corporation.

This provision, they contend, "recognizes the principle that preincorporation religious societies have some quasi-legal status." (Pl. Opp'n at 13.)

Although this statute has been invoked very rarely, it has been interpreted in accordance with its plain meaning. *See Saint Nicholas Ukrainian Orthodox Church of Little Falls, N.Y. v. St. Nicholas Ruthenian (Ukrainian) Greek Catholic Church of Little Falls*, N.Y., 157 N.Y.S.2d 586, 592 (N.Y. Sup. Ct. 1956) ("There is no question that under § 4 of the Religious Corporations Law the temporalities and property of an unincorporated church pass, on its incorporation, to the corporation . . . ."), *aff'd sub nom. Saint Nicholas Ukrainian Orthodox Church of Little Falls v. Saint Nicholas Ruthenian Greek Catholic Church of Little Falls*, 164 N.Y.S.2d 980 (N.Y. App. Div. 1957); *Westminster Presbyterian Church of W. Twenty-Third St. v. Trustees of Presbytery of New York*, 127 N.Y.S. 836, 850-51 (N.Y. App. Div. 1911) ("Legislation vesting an incorporated church with the property of an

---

[9] Temporalities are the "secular properties or revenues of an ecclesiastic [entity]." Black's Law Dictionary (10th ed. 2014).

unincorporated church . . . has been sustained." (citing, inter alia, N.Y. Relig. Corp. Law § 4)); *see also Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 729 F. Supp. 2d 141, 145 (D.D.C. 2010) ("New York Corporations law allows for the automatic transfer to the new corporation of interests in property that were possessed by the predecessor unincorporated religious society. This is the case regardless of the physical location of the property at the time of incorporation." (citing N.Y. Relig. Corp. Law § 4)).

The determination that a religious corporation assumes the assets of the pre-incorporation religious entity, however, does not resolve the more decisive question of whether the religious corporation also assumes the liabilities of the earlier entity. Plaintiff admits that New York religious corporation law is silent on whether liabilities transfer along with assets, but claims that New York nonprofit law applies in this case and favors a finding of liability assumption. (*See* Pl. Opp'n at 13.)

Plaintiff is correct that where religious corporation law is silent, non-profit corporation law applies. *See* N.Y. Relig. Corp. Law § 2-b(1)(a) (providing that "not-for-profit corporation law applies to every corporation to which this chapter applies" except where the two bodies of law conflict); *Schoenthal v. Beth Jacob Teachers Seminary of Am., Inc.*, 675 N.Y.S.2d 756, 757 (N.Y. Sup. Ct. 1998) (acknowledging that "Not-For-Profit Corporation Law is generally controlling with respect to religious corporations").

26

Given the acknowledged silence of religious corporation law on this issue, non-profit corporation law is applicable here.

Plaintiff posits that the applicable statute providing for liability assumption in this case is N.Y. Not-for-Profit Corp. Law § 905. That statute, titled "Effect of merger or consolidation," provides, as relevant here:

> The surviving or consolidated corporation shall assume and be liable for all the liabilities, obligations and penalties of each of the constituent corporations. No liability or obligation due or to become due, claim or demand for any cause existing against any such corporation, or any member, officer or director thereof, shall be released or impaired by such merger or consolidation.

N.Y. Not-for-Profit Corp. Law § 905(b)(3) ("§ 905(b)(3)").

This provision, significantly, presumes that at least one corporation was already in existence before the later entity assumed its liabilities. The "surviving or consolidated corporation" in this case would be the U.S. Grace Road Church, which, under § 905(b)(3), assumes the liabilities — after a merger or consolidation — of "constituent corporations." New York not-for-profit law defines "constituent corporation" as an "*existing corporation* that is participating in the merger or consolidation with one or more other corporations." N.Y. Not-for-Profit Corp. Law § 901(b)(3) (emphasis added) ("§ 901(b)(3)").

Plaintiff's argument about the application of § 905(b)(3) in these circumstances is underdeveloped. It is not

clear if he is arguing that U.S. Grace Road Church assumed the liabilities of the pre-incorporation New York-based religious society, as his reference to N.Y. Relig. Corp. Law § 4 would suggest, or is instead arguing that U.S. Grace Road Church assumed the liabilities of Korean Grace Road Church. Regardless, § 905(b)(3) appears inapplicable in either scenario.

To the extent plaintiff argues that U.S. Grace Road Church assumed the liabilities of the pre-incorporation religious society, that argument is foreclosed by the text of § 905(b)(3). The "surviving or consolidated corporation" — which plaintiff alleges is U.S. Grace Road Church — would have assumed the liabilities, after any merger or consolidation, of "constituent corporations." § 905(b)(3). But, as noted above, New York religious corporation law provides that a "constituent corporation" must have been an "*existing corporation*" that participated in a "merger or consolidation with one or more other corporations." § 901(b)(3) (emphasis added). The pre-incorporation religious society was, of course, just that: a *pre-incorporation* society. It was never an "existing corporation" within the meaning of § 901(b)(3).[10] This conclusion is unaffected by N.Y. Relig. Corp. Law § 4, which provides only that the later-formed

---

[10] Significantly here, the court rejects plaintiff's argument that U.S. Grace Road Church was a *de facto* corporation under New York law. *See supra* Part III.A.

corporation assumes the property of the pre-incorporation religious entity. That section cannot reasonably be interpreted to provide that the pre-formation entity was, in fact, already a corporation.

Plaintiff appears to alternatively argue that U.S. Grace Church assumed the liabilities of Korean Grace Road Church under § 905(b)(3). Liability under this theory is premised on a consolidation or merger between the Korean Grace Road Church and the U.S. Grace Road Church. (Pl. Opp'n at 15-17.) Since there was concededly no *de jure* merger or consolidation, plaintiff relies on the *de facto* merger doctrine courts use to evaluate whether a successor corporation assumes the liabilities of its predecessor. (*Id.*) *See Schumacher v. Richards Shear Co.*, 451 N.E.2d 195, 198 (N.Y. 1983) (discussing *de facto* merger exception to the general rule that "a corporation which acquires the assets of another is not liable for the torts of its predecessor"); *see also New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (same); *Chao v. Int'l Bhd. of Indus. Workers Health & Welfare Fund*, 97 F. Supp. 3d 268, 274 (E.D.N.Y. 2015) (applying New York's *de facto* merger doctrine in context of determining successor liability for not-for-profit entities). "[T]he de facto merger exception derives from the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities in order to ensure that a source remains

to pay for the victim's injuries." *Nettis v. Levitt*, 241 F.3d 186, 194 (2d Cir. 2001) (internal quotation marks and citation omitted), *overruled on other grounds by Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006).

Generally, in evaluating whether a *de facto* merger produces liability for a successor corporation, "New York courts have looked to the four traditional common-law factors: whether there is continuity of ownership, continuity of management, a dissolution of the selling corporation, and the assumption of liabilities by the purchaser." *Nat'l Serv. Indus.*, 460 F.3d at 210. A prerequisite to a finding of a *de facto* merger is that "only one corporation survives the transaction; the predecessor corporation must be extinguished." *Schumacher*, 451 N.E.2d at 198; *see also Ladjevardian v. Laidlaw-Coggeshall*, Inc., 431 F. Supp. 834, 839 (S.D.N.Y. 1977) ("In the case at bar there was neither a consolidation nor a merger, for [the purported predecessor] continued to exist after the sale . . . .").

In this case, plaintiff's complaint states that Korean Grace Road Church "is a South Korean non-profit corporation with a principal address of 159 Juam-dong, Gwacheon-si, Gyeonggi-do, The Republic of Korea (South Korea)." (Compl. at ¶ 2.) This is effectively an admission that Korean Grace Road Church continues to exist, at least as a formal matter. If Korean Grace Road Church (the purported predecessor) continues to exist, U.S. Grace Road

Church (the purported successor) cannot have assumed the Korean entity's tort liabilities through a *de facto* merger. *See Schumacher*, 451 N.E.2d at 198 (holding that application of *de facto* merger doctrine requires that "the predecessor corporation . . . be extinguished"); *see also Nat'l Serv. Indus.*, 460 F.3d at 210 (recognizing that "New York courts have looked to . . . whether there is . . . a dissolution of the selling corporation"). Consequently, U.S. Grace Road Church cannot be liable — through New York religious corporation law or New York not-for-profit law — as the successor either to the pre-incorporation New York religious society or Korean Grace Road Church.

The court is further guided on the issue of successor liability for U.S. Grace Road Church by a principle of New York law that affords special solicitude to religious corporations. *See Berlin v. New Hope Holiness Church of God, Inc.*, 460 N.Y.S.2d 961, 963 (N.Y. App. Div. 1983) (Rubin, J., dissenting) (recognizing that religious corporations are "one of a class of litigants that the Legislature has determined to be entitled to special safeguards . . . similar to those granted certain individuals such as infants, incompetents and others under disability" (citations omitted)); *see also Park Ave. Bank v. Cong. & Yeshiva Ohel Yehoshea*, 907 N.Y.S.2d 571, 576 (N.Y. Sup. Ct. 2010) (same); *Wolkoff v. Church of St. Rita*, 505 N.Y.S.2d 327, 332 (N.Y. Sup. Ct. 1986) (same), *aff'd sub nom. Wolkoff v. Church of St. Rita,*

*Port Richmond*, 518 N.Y.S.2d 1020 (N.Y. App. Div. 1987). In the absence of clear authority providing for liability in this context, U.S. Grace Road Church must be dismissed from this suit.

The dismissal of U.S. Grace Road Church is without prejudice. Should plaintiff be able to cure the deficiencies outlined above with respect to his theories of corporate liability for U.S. Grace Road Church, he is free to amend his complaint.

## IV. <u>Failure to State a Claim</u>

Defendants next present a series of arguments targeted at specific causes of action in the complaint that they contend fail to state a claim upon which relief can be granted.

### A. <u>Negligent Infliction of Emotional Distress</u>

Defendants argue that plaintiff's cause of action for negligent infliction of emotional distress insufficiently alleges the "nature of any duty owed to the Plaintiff by any of the Defendants." (Def. Mem. at 4.) Plaintiffs allege that the duty "under these facts is clear — the duty not to cause harm to another individual." (Pl. Opp'n at 25.)

To state a claim for negligent infliction of emotional distress in New York,

> a plaintiff must adequately plead four elements: (1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.

*Shearon v. Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 156 (E.D.N.Y. 2013) (citation omitted). The duty element of a negligence claim requires "a relationship between . . . two parties such that society imposes an obligation on one to protect the other from an unreasonable risk of harm." *Stanford v. Kuwait Airways Corp.*, 89 F.3d 117, 123 (2d Cir. 1996). The existence of a duty is a "legal, policy-laden declaration reserved for Judges." *Oskar v. IDS Prop. Cas. Ins. Co.*, No. 09-CV-4516, 2011 WL 1103905, at *6 (E.D.N.Y. Mar. 23, 2011) (internal quotation marks and citation omitted). The New York Court of Appeals has held that "[o]ne who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by . . . the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge." *Parvi v. City of Kingston*, 362 N.E.2d 960, 964-65 (N.Y. 1977) (internal quotation marks omitted) (citing Restatement (Second) of Torts § 324).

In this case, plaintiff alleges, first, that he has a "history of severe mental [illness]" and was incapable of making "informed decisions." (Compl. at ¶¶ 10, 17.) He also alleges that the churches, through their agents, caused him to move into church property for the purpose of providing religious healing, and physically restrained him on church property until his leg

33

developed gangrene and ultimately required amputation. (*Id.* at ¶¶ 29-40.) Even if the church and its members had no duty to plaintiff until the moment they restrained him, they acquired a duty to exercise reasonable care to secure his safety during the period of his restraint. *See Parvi*, 362 N.E.2d at 964-65; *see also G. ex rel. G. v. Athletic Alliance Risk Purchasing Grp.*, 747 N.Y.S.2d 884, 888 (N.Y. Sup. Ct. 2002) ("The test is 'whether a defendant's conduct has placed another in a more vulnerable position than he or she would have been in had the defendant done nothing.'" (quoting *Ward v. Edinburg Marina Inc.*, 741 N.Y.S.2d 304, 306 (N.Y. App. Div. 2002)); *Zelenko v. Gimbel Bros.*, 287 N.Y.S. 134, 135 (N.Y. Sup. Ct. 1935) (holding that where a defendant storekeeper voluntarily separated a sick patron from the public to give her medical aid, he deprived her of the opportunity to be aided by bystanders and acquired a duty of care); Restatement (Second) of Torts § 324 cmnt. d ("Where the actor's conduct has changed the other's position for the worse, the fact that the actor was under no duty in the first instance to render the services is immaterial in determining whether or not he has exercised reasonable care."). The court therefore concludes that plaintiff has adequately pled a duty of care with respect to his negligent infliction of emotional distress claim.

B.   *Respondeat Superior* Allegations

Defendants next allege that plaintiff has failed to adequately plead the elements necessary to sustain his *respondeat superior* allegations. (Def. Mem. at 4-5.) The fourth, fifth, and sixth causes of action in this case seek to hold Shin, U.S. Grace Road Church, and Korean Grace Road Church liable for the conduct of church members through the doctrine of *respondeat superior*. (Compl. at ¶¶ 51-56.) Under the New York common law doctrine of *respondeat superior*, "an employer may be held liable for the tortious acts of an employee committed within the scope of his employment." *Abdelhamid v. Altria Grp.*, Inc., 515 F. Supp. 2d 384, 394 (S.D.N.Y. 2007).

Here, the parties' dispute appears to be about whether Ms. Chung's activities were adequately pled to be within the scope of her employment or instead appeared facially to be motivated by personal reasons. (*See* Def. Mem. at 4-5; Pl. Opp'n at 25-26.) In his complaint, plaintiff seeks to hold Shin and the two churches liable for the actions of other church members beyond just Ms. Chung. (*See, e.g.*, Compl. at ¶¶ 52, 54, 56 (alleging that the two churches and Shin are "responsible for the actions of the other Defendants and/or its employees, agents or servants performed within the course of their employment or the scope of their

authority").)[11] Even if the court were to focus exclusively on the actions of Ms. Chung, however, plaintiff has adequately pled that she was acting within the scope of her employment when she allegedly lured plaintiff to the church for religious healing of his mental illness.

First, plaintiff alleges that Ms. Chung was an employee of the Korean Grace Road Church and Shin. (*Id.* at ¶ 14.) Plaintiff also claims that Ms. Chung "invited and convinced [him] to travel from Connecticut to New York" under "the direction of Ms. Shin." (*Id.* at ¶ 17.) Plaintiff further alleges that Shin "directed Ms. Chung to bring the Plaintiff to New York as part of a plan to treat the Plaintiff's severe psychosis by removing him from prescription medication and attempting religious healing. On information and belief, Ms. Shin was either the origin of said plan, or instrumental to the formulation of said plan." (*Id.* at ¶ 18.) The foregoing are sufficient allegations — on a motion to dismiss — to show that Ms. Chung was acting in the scope of her employment when she brought plaintiff to the church for religious healing that ultimately resulted in the loss of his leg.

---

[11] The sixth cause of action is a possible exception. That claim focuses on *respondeat superior* for the Korean Grace Road Church. Although it contains language that appears to seek liability under *respondeat superior* for the actions of multiple church members, the cause of action is captioned "RESPONDEAT SUPERIOR AS TO GRACE ROAD CHU[R]CH (SOUTH KOREA) *FOR CONDUCT OF MYUNG-HEE CHUNG*." (Compl. at ¶ 56 (emphasis added).)

Defendants contend that Ms. Chung's actions were personally motivated when she sought to cure her brother. (Def. Mem. at 5.) Even if that were a reasonable inference from the complaint, as noted above, plaintiff adequately alleges that Ms. Chung was also acting in the scope of her employment.

Although an agent might have a mixed personal and professional motive in performing a certain act, the employer may still be held liable for the act. *See Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F. Supp. 162, 169 (E.D.N.Y. 1990) ("[T]he acts of an agent motivated partly by self-interest — even where self-interest is the predominant motive — lie within the scope of employment so long as the agent is actuated by the principal's business purposes to any appreciable extent." (internal quotation marks and citation omitted)); *see also Gibbs v. City of New York*, 714 F. Supp. 2d 419, 425 (E.D.N.Y. 2010) ("If the operation of one's mind were capable of being plumbed with reliability to identify motive, then even if [the employee] were motivated in part to further the service of his master respondeat superior would be applicable."); *David Crystal, Inc. v. Cunard S. S. Co.*, 223 F. Supp. 273, 288 (S.D.N.Y. 1963) ("The mere fact that [an employee] was acting for his own corrupt purposes does not place the act outside his employment."); Restatement (Second) of Agency § 236 (2015) ("Conduct may be within the scope of employment, although

done in part to serve the purposes of the servant or of a third person.").[12]

Defendants also direct the court to an affidavit of Ms. Chung declaring that she was never an employee of Shin or the church. (Def. Mem., Ex. B.) The court cannot consider such an affidavit when deciding a motion to dismiss for failure to state a claim. *See Novie*, 2012 WL 3542222, at *9 ("[I]t is improper for a court to consider declarations and affidavits on a motion to dismiss."). Consequently, plaintiff has adequately pled that Ms. Chung was acting in the scope of her employment for the *respondeat superior* allegations to survive defendants' motion to dismiss.

C.  Negligent Supervision

Defendants next allege that because plaintiff does not claim any of the defendants were on notice of the purported agents' propensity to commit torts, the claim for negligent supervision must be dismissed. (Def. Mem. at 5-6.)

"To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and

---

[12] Comment b of this restatement section is also illustrative: "The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service, as where the servant drives rapidly, partly to deliver his master's goods, but chiefly in order to terminate his day's work or to return the vehicle to the master's premises." Restatement (Second) of Agency § 236 cmt. b.

the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted). Failure to plead that a supervisor knew or should have known of an employee's "propensity to commit the tortious acts alleged . . . negates the employer's liability as a matter of law." *Naegele v. Archdiocese of New York*, 833 N.Y.S.2d 79, 80 (N.Y. App. Div. 2007).

Plaintiff alleges that Shin and the other church members forcibly prevented Mr. Chung from taking his medication at least as early as September 26, 2012. (Compl. at ¶¶ 18, 21, 27, 65(c).) The deprivation of plaintiff's medication by defendants "caused outbursts and exacerbation of Mr. Chung's psychotic symptoms, including: visual/auditory hallucination, suicidal thoughts, self-mutilation, self-deprivation of foods and other compulsory behaviors." (Compl. at ¶ 23.) At that time, defendants Shin and the two churches were on notice — since Shin, said to be the head minister and founding member of both churches, apparently participated directly in the activity (*id.* at ¶¶ 4, 21) — of the

tortious propensities of the church members.[13] Plaintiff alleges that he was not restrained in the manner that allegedly led to the amputation of his leg on October 10, 2012, approximately two weeks later. (*Id.* at ¶ 29.) Plaintiff has therefore adequately pled that Shin and the churches knew or should have known of the tortious propensities of the church members before at least some of the tortious conduct leading to his injuries.

D.  Civil Conspiracy

Defendants next contend that plaintiff has inadequately pled a conspiracy claim. (Def. Mem. at 6; *see also* Compl. at ¶¶ 69-73.) To properly plead civil conspiracy, "a plaintiff must allege both a primary tort[14] and also show the four elements of a conspiracy, namely: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Decter v. Second Nature Therapeutic Program, LLC*, 42 F. Supp. 3d 450, 464 (E.D.N.Y. 2014) (internal quotation marks and citation omitted).

---

[13] That conduct alone, for example, would likely state a claim for intentional infliction of emotional distress, which requires extreme and outrageous conduct; an intent to cause, or reckless disregard of, a substantial probability of causing severe emotional distress; a causal link between the conduct and the injury; and severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Howell v. New York Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).
[14] Because plaintiff has adequately pled at least one tort, the court does not address defendant's argument that conspiracy is not a stand-alone cause of action. (Def. Mem. at 6.)

Because U.S. Grace Road Church must be dismissed, *see supra* Part III, the court focuses on any potential agreement between the remaining defendants, Shin and Korean Grace Road Church. Here, defendants contend that plaintiff "does not allege an agreement between the parties." (Def. Mem. at 6.) Plaintiff does claim, however, that for all intents and purposes "there was never any individuality or separateness between the Defendants." (Compl. at ¶ 5; *see also id.* at ¶ 4 (stating that Shin "is the head minister and the founding member of . . . Grace Road Church in Korea").) This allegation that Shin and the Korean Grace Road Church were one and the same, while it might support an implicit agreement, ultimately dooms the conspiracy claim.

Although it is "possible for a corporation and an individual to be guilty of a civil conspiracy, . . . the person and the entity must be separate." 15A C.J.S. Conspiracy § 21 (citing *Bereswill v. Yablon*, 160 N.E.2d 531, 533 (N.Y. 1959) ("While it is entirely possible for an individual and a corporation to conspire, it is basic that the persons and entities must be separate.")); *see also Satin v. Satin*, 414 N.Y.S.2d 570, 570 (N.Y. App. Div. 1979) ("[I]t is doubtful that there could here be a conspiracy between this individual and his own corporation." (citing *Bereswill*, 160 N.E.2d at 532)); *Moskowitz v. Feuer*, 38 N.Y.S.2d 242, 243 (N.Y. App. Div. 1942) *aff'd*, 50 N.E.2d 659 (N.Y. 1943) ("[N]o cause of action is set forth to hold liable the

defendant for the breach by [the corporation], of which he was an officer and a director."). Here, plaintiff's own allegations undercut any argument that Shin and the Korean Grace Road Church were separate entities capable of conspiring with each other. The civil conspiracy claim therefore must be dismissed.

## V.    <u>Leave to Amend</u>

Plaintiff seeks leave to amend the complaint. (Pl. Opp'n at 27-28.) The only rulings adverse to plaintiff in the court's decision are the dismissal without prejudice of U.S. Grace Road Church as a defendant and the dismissal of the civil conspiracy claim. As noted earlier, if plaintiff is able to cure the deficiencies with respect to his theories of corporate liability for U.S. Grace Road Church, he is free to amend his complaint. Although any amended complaint would be plaintiff's fourth complaint in this action, the court's decision today represents the first time any court has ruled on the adequacy of his claims. *See* Fed. R. Civ. Proc. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

As to the civil conspiracy allegation, however, the court concludes that leave to amend would be futile. Accordingly, plaintiffs are denied leave to amend the conspiracy count. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991) ("[W]here a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend.").

## CONCLUSION

The court concludes that defendants' motion to dismiss is GRANTED in part and DENIED in part. First, U.S. Grace Road Church is dismissed from this action without prejudice. Second, plaintiff's civil conspiracy claim is dismissed with prejudice. The balance of defendants' motion is denied.

**SO ORDERED.**

Dated:　March 14, 2015
　　　　　Brooklyn, New York

　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　Kiyo A. Matsumoto
　　　　　　　　　　　　　　United States District Judge